Good morning. May it please the Court, I'm Eric Schneider for José Rivera-Cruz. I'd like to begin, if I could, by going directly to the government's argument made in its testimony here was that it gave up the right to pursue an armed career criminal enhancement in its sentencing because I think that position best illustrates both the lack of consideration that was given by the government in this case and the overall sort of lack of fairness in the procedure that was used to produce this conviction. There's a possibility of a 15-year armed career criminal sentence in this case because the defendant doesn't have the necessary predicates and I think we can go through, and I'm happy to do so, an analysis of his For an objective piece of evidence as to that fact, I would simply point the Court to the pre-sentence investigation report prepared by probation at page 14 where the sentencing options are laid out by probation and there's no mention of an armed career criminal enhancement. Of course, obviously there was not an armed career criminal indictment either. Did that point get briefed? I didn't see an analysis of the prerequisites. Certainly the government did not provide it. Did you file a reply brief? I did not, and in retrospect I probably should have, and I'd be happy to provide later analysis in writing if that would assist the Court, but the point here is that it was never in play, it was never discussed in court, it's not mentioned in the plea agreement, and when you look through the probation report you can see why. There just simply aren't armed career criminal predicates. Wasn't the fact that, well, didn't the hearing take place because the defendant was insisting on a 15-year sentence and not fighting the ACCA and that's what got him into court? That's correct, and as you would note, I've raised the issue on direct appeal of ineffective assistance for exactly that reason. I mean, the question here is the defendant ended up pleading guilty under a plea agreement that reserved all rights to the maximum level for the government and gave the defendant no effective concession at all. So, I mean, obviously the government's not required to make any concession in the context of a prosecution, but if it I think there's a real due process issue with kind of placing the veneer of a negotiated resolution and a guilty plea on the conviction that's produced. If the defendant simply says I can't work something out with the government, I need to go into court and either have a trial, which is obviously by constitutional right, or waive my rights independently of the government and simply decide to plead naked and see what I can do in my sentencing arguments with the judge. Either way, the defendant has that right. Even if we put aside the ACCA issue, isn't one thing that the defendant got was a shot at a sentence lower than the 120 months. He's had a shot at a 96-month sentence based upon concessions that the government made with regard to the obliterated serial number, with regard to the three points for acceptance of responsibility, and when counsel of the to argue to the trial judge for a sentence that was 24 months below the maximum. Well, he did have that opportunity. He would have had that opportunity without a plea agreement as well to argue for that sentence. Well, he might have had to argue for a downward departure rather than a low end of a guideline range. Well, he was arguing for a downward departure as it was because the guideline range ended up as 110 to 137, and he had 120 statutory max anyway. So he was arguing for that departure regardless. But the real question here is not what he was entitled to advocate for on his own, but what did the government's participation in this so-called negotiated resolution give him? Because the third reduction point was in no way committed to by the government or asked for by the government. It simply was stated in an estimated guideline sentencing range in the plea agreement that it was expected to be given, but probation has an independent duty to assess whether that's available, and it assessed it as available. With regard to the four-level enhancement, again, this is not a seat plea. The government didn't forego the right to seek that enhancement. What they did is omit it from their stated estimate of the guideline range and then leave it to probation, obviously, to add it in. It's indicted in, you know, it's effectively indicted. I don't understand all this two versus three points for acceptance responsibility. I mean, the government, this plea agreement was worked out on the eve of trial, isn't that correct? That's correct. So it would seem that in those circumstances he would not have been entitled to those three points, isn't that correct? I think that the government did not at any time object when it seems that they could well have did not object to giving him those three points. Isn't that true? Well, it's true the government didn't object to giving him the three points, but I don't think that, and again, this is why a potential remand for some facts about these negotiations is something that the court should consider, because the reason that we went up to the eve of trial in plea negotiations without a resolution is the government refused to move off a 15-year minimum sentence sort of position in the negotiations, but the defendant wasn't exposed to that. That was 50% more time than the statutory maximum to which this man could have been exposed. So the idea that the government is negotiating in good faith by saying, well, the best we're going to give you is five years above the statutory maximum, which in fact we lawfully couldn't impose, and then we're going to say, and this is actually sort of part of the give and take that the government is entitled to get into with a criminal defendant to deprive them of their liberty, I think we're really falling below a baseline due process fairness requirement. Well, the ACCA jurisprudence is complicated, as we all know, and we're being hit for the first time orally with your argument that there was no exposure to a possible ACCA sentence. We don't have an analysis of the predicate crimes, and so you're telling us that we should have applied when we haven't been given the sort of analysis that would allow us to conclude that. Well, I agree that you haven't been given the analysis that would allow you to conclude that from me. However, probation, of course, set forth its own analysis that made no mention of the Armed Career Criminal Act. If you look at the pre-sentence investigation report, in order to determine, you know, one crime is divisible, so we'd need to go back and get the Shepard documents. There's no facts set forth in the pre-sentence investigation report, no Shepard documents in the record at all anyway. Two crimes are, you know, were held by the Castro-Vasquez remand that this Court sent back for the termination of Puerto Rican armed robbery and attempted, sorry, non-civil robbery and attempted robbery statutes, again, held below by Judge Fuste on that remand, not to be ACCA predicates. That's all we've got in the record in one drug conviction that's confusingly in this particular case a complicated analysis, and I acknowledge that it's not before the Court, and I would be happy to write up that analysis and submit it for you. But at the, excuse me, at the time of the, and again, it is unfortunate that we do not have this history and these legal issues addressed, but at the time that the negotiations were taking place, this clarity that you've now described as to the status of some of these at the time that these negotiations were taking place, that his record was, as you now characterize it, that that record did not include predicate convictions that would make him vulnerable to the armed career criminal designation. I would suggest it was clear, and that's why probation didn't raise the issue. His, the, you know, he had a misdemeanor burglary offense statutory maximum sense for that 90 days, obviously not an armed career criminal predicate. Then the only question is the two robbery convictions. Those are, by this Court's decision, it casts Revesquez in 2015, it casts at the minimum extremely serious doubt on whether those are predicates, and that's all there is other than one drug conviction. So the idea that, I mean, frankly, I don't really know where the government is coming from with that position. So let me fall back to a question that I asked earlier. I didn't quite understand your answer. Isn't it true that the government's position with regard to the sentencing guideline range, putting aside what the probation officer said, but the government's position gave the defendant when he came to court, gave his attorney the opportunity to argue for a bottom of the guidelines range as the government calculated it without having to convince the judge to do a downward departure. He had a shot to argue for a bottom of the guideline range that was below the 120 months, based on the government's analysis. Based on the terms of the agreement, he was entitled to argue for a 96-month sentence. He had that right without an agreement as well. So I think the real question here is not did he end up with that right before the court, but did some action or concession by the government in the context of the negotiations as embodied in that plea agreement give him some right or forego some advantage that the government otherwise would have had or that he would not have had. Because the government always would have had the right to go and advocate for the statutory maximum sentence, which is what they did and what they were able to get. The question really here is not did he have the right, because the question is did he gain any right from this agreement that he wouldn't have had either after a jury trial or a naked plea. Second topic. Is the standard here plain error? I disagree. I don't think it is, because I think the question is not. I don't think it's been addressed by this court. But I don't argue simply that this court should say the plea is withdrawn, return to pretrial status, which would be a plain error analysis under the Rios-Mayoc decision. The question here is whether the defendant is entitled, is this avoidable contract as to the defendant, is he entitled to go back and bring the opportunity to withdraw his right to either accept what he has and go back to trial or seek a new negotiated resolution that actually gives him some advantage vis-à-vis the government. Okay. Judge Lynch, do you have any questions for counsel? No, thank you. Thank you, counsel. Thank you very much. Counsel, I assume you will address the discussion you've been having about the vulnerability of the defendant to an armed career criminal designation. That is certainly very central to your argument that there was consideration for this plea agreement. Your Honor, as mentioned during discussions, at the time of negotiations, it was not at all clear that this enhancement would not apply. Why is that? There was no case law from this circuit stating that it did not or that it did. It simply was a matter of that it was, for lack of a better phrase, up in the air at the moment. And under those circumstances, it was the government's position that it could pursue this line to obtain a sentencing enhancement which would have exposed the appellant, rather than to a 10-year maximum, to a 15-year minimum. And that is why the government maintains that it gave adequate consideration in exchange for his guilty plea. It forfeited, the government forfeited its right to even pursue the sentencing enhancement under the ACCA. And that is the heart of your argument, that the government did extend consideration to this agreement. Is that correct? The government's argument is twofold. Certainly the ACCA enhancement, seeing as that it would expose him to a 15-year minimum rather than a 10-year maximum, certainly is a considerable consideration from the viewpoint of the defendant. However, the plea agreement itself included a three-point acceptance of responsibility reduction. Rather than this coming directly from the probation office, it was already included in the government's plea agreement with the defendant. This third point was further consideration given the fact that this plea agreement came at the very eve of trial, Your Honors. Under those circumstances, the government may well have said, I have not gotten any benefit from saving time or resources from trial prep as I've already prepared for trial. Therefore, I will not grant you that third point. But that, the government did not do. In fact, the government readily acquiesced to that third point and further stated that while the government maintained its right to argue for a 120-month sentence, he was free to argue for a sentence as low as 96. And further, the parties agreed that a sentence in this sentencing recommendation was reasonable within accordance with the 3553A factors. I'm trying to understand how these enhancements played into the sentencing calculation. You also talk about, there was evidence that the serial number was obliterated on the gun. Is that correct? That fact was included in the version of facts in the plea agreement, yes, Your Honor. Right. And that would result, it could add points to the total defense level. Isn't that correct? It could, Your Honor. What that then does, though, that pushes the guideline range above the statutory maximum. So, the government was pushing for that statutory maximum. The fact that the government was willing to not push for that particular increase in the total defense level, that really is of no consequence because you were pushing for the maximum sentence under the statute. Isn't that true? Yes, Your Honor. Why does it matter that the government was willing to give that concession with respect to the obliteration? It seems to be a concession of no consequence in this sentencing. Your Honors, in the sentencing context, the guideline sentencing range plays a pivotal role. It is the starting point for the sentencing court to fashion its sentence. In this case, giving that third point and potentially that four level and having four obliterated serial number would have placed the defendant at a lower guideline sentencing range, which would have been, which would have made his case easier for a sentence at a lower range than the statutory guideline, I mean the statutory maximum of 10 years. For example, in this case, given that third point, his total offense level of 25 in conjunction with a criminal history category of six led to a guideline range that went below and over the statutory maximum, 110 to 137. Without that third point, that guideline range would have begun at 120. So his guideline range would have been 120. The guideline would have told the judge, you need to sentence him to at least 120. And given the statutory maximum, the judge would have understood this is your sentence. It would have made the defendant's case for a lesser sentence that much harder. Furthermore, your honors, as just stated previously, the government in this case agreed under the terms of the plea agreement that a sentence of 96 months or 120 was reasonable in accordance with the 3553A factor. So there was an additional consideration given by the government in that if he had been not appealed or reasonable of that sentence, that would not have been the case had he gone to trial or pursued a straight plea otherwise. Consideration, you are saying, can come in the form of a stronger argument, a stronger defense argument, even if the trial judge does not ultimately adopt that argument. A defendant is getting consideration just by being able to come in armed with arguments that he wouldn't have had but for the government's concessions, even if the trial judge does not adopt those arguments. Exactly, your honor. I believe this court has used a phrase that the defendant has a chance at less, which is what the plea agreement did in this case. For those reasons and those in the government's brief, the government maintains that the court should affirm. Judge Lynch, do you have any questions for counsel? No, I do not. All right, thank you. Thank you, counsel. Thank you both.